**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| LIGHTING SCIENCE GROUP CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>SHENZHEN JIAWEI PHOTOVOLTAIC LIGHTING CO., LTD., et al.,<br><br>  Defendants. | Case No. 16-cv-03886-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW** |

In this patent infringement action, Plaintiff Lighting Science Group Corporation ("Lighting Science") asserts that Defendants Shenzhen Jiawei Photovoltaic Lighting Co., Ltd., and Jiawei Technology (USA), Limited (collectively, "Jiawei") infringe U.S. Patent Nos. 8,201,968 ("the '968 patent"); 8,672,518 ("the '518 patent"); and 8,967,844 ("the '844 patent") (collectively, "the Asserted Patents"). Before the Court is Jiawei's motion to stay this case pending *inter partes* review. Pursuant to Civil Local Rule 7-1(b), the Court finds the instant motion suitable for decision without oral argument and hereby VACATES the hearing set for August 24, 2017. For the reasons discussed below, Jiawei's motion is conditionally GRANTED.

**I.  BACKGROUND**

  **A.  Factual Background**

Lighting Science and Jiawei are direct competitors in the LED lighting market. Amended Complaint ¶ 11, ECF 9. Lighting Science is an American corporation with its principle place of business in Rhode Island. *Id.* ¶ 1. Jiawei is a Chinese corporation with its principle place of business in Shenzhen, China. *Id.* ¶ 2.

All three Asserted Patents relate to a low-profile LED light fixture. '968 patent, Abstract;

'518 patent, Abstract; '844 patent, Abstract. The '968 patent, titled "Low Profile Light," issued on June 19, 2012. The '518 and '844 patents, both titled "Low Profile Light and Accessory Kit for the Same," issued in 2014 and 2015, respectively. The '518 patent is a continuation-in-part of the '968 patent, and the '844 patent is a continuation-in-part of the '518 patent. The '518 and '844 patents share the same specification, which is similar to the '968 specification.

Since 2013, Lighting Science has brought a number of patent infringement actions asserting one or more of the three Asserted Patents: 19 in the Middle District of Florida and one (the instant case) in this district. Ex. 4 to Mot. at 9, ECF 71-5. To date, 14 of these actions have settled. Opp. 3; *see also* Ex. 2 to Reply at 2, ECF 79-3.

Several of Lighting Science's infringement actions have prompted *inter partes* review ("IPR") activity. In July and August 2016, Generation Brands LLC ("Generation Brands"), a defendant in *Lighting Science Group Corporation v. Sea Gull Lighting Products LLC et al.*, Case No. 6:16-cv-00338, filed IPR petitions on the '968 and '844 patents ("the Original Petitions"). IPR2016-01478, Paper No. 1; IPR2016-01546, Paper No. 1. On February 6, 2017, the Patent Trial and Appeal Board ("PTAB") instituted IPR on claims 1, 2, 5, 6, 11, 14-16, and 19-23 of the '968 patent and claims 1-3, 5, 7, 9, 10, 12, 14, 16, 17, and 20-24 of the '844 patent. Ex. 5 to Mot. at 37, ECF 71-6 (IPR2016-01478, Paper No. 8); Ex. 6 to Mot. at 2, ECF 71-7 (IPR2016-01546, Paper No. 11). However, the parties subsequently settled and, on March 13, 2017, jointly moved to dismiss both petitions. Ex. 7 to Mot., ECF 71-8. The PTAB granted this motion three days later. *Id*.

On April 17, 2017, Technical Consumer Products, Inc., Nicor, Inc., and Amax Lighting, defendants in several other patent infringement actions brought by Lighting Science, filed IPR petitions for each of the three Asserted Patents ("the Current Petitions"). Ex. 8 to Mot., ECF 71-9 (IPR2017-01287, Paper No. 1); Ex. 9 to Mot., ECF 71-10 (IPR2017-01280, Paper No. 1); Ex. 10 to Mot., ECF 71-11 (IPR2017-01285, Paper No. 1). The Current Petitions seek review of the following claims: claims 1-12, 14-17, and 19-23 of the '968 patent, claims 1, 3-8, and 10-14 of the '518 patent, and claims 1-5, 7-9, 11, 12, 14, 16, 17, 19, and 21-24 of the '844 patent. *Id*.

### B. Procedural History

Lighting Science initiated the instant case against Jiawei on July 11, 2016. ECF 1. It amended its complaint the following day. ECF 9. Jiawei answered on December 12, 2016. ECF 29. The Court held two case management conferences in January and March, 2017. ECF 49, 62.

On March 9, 2017, Lighting Science identified the following claims as asserted: claims 1, 2, 14, 15, 19, and 20-23 of the '968 patent; claims 1, 3, 4, 5, 7, 9, 11, and 12 of the '518 patent; and claims 1-5, 7-9, 12-17, and 19-24 of the '844 patent (collectively, "the Asserted Claims"). Ex. 11 to Mot., ECF 71-12.

## II. LEGAL STANDARDS

A district court has inherent power to manage its own docket and stay proceedings, "including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). A court is under no obligation to stay proceedings pending parallel litigation in the PTAB. *See Aylus Networks, Inc. v. Apple, Inc.*, No. C-13-4700 EMC, 2014 WL 5809053, at *1 (N.D. Cal. Nov. 6, 2014). The factors that courts in this district consider when determining whether to stay litigation are: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *PersonalWeb Techs., LLC v. Apple, Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014).

## III. DISCUSSION

### A. Stage of the Litigation

First, the Court looks to the question of whether the litigation has progressed significantly enough for a stay to be disfavored. *See PersonalWeb Techs., LLC*, 69 F. Supp. 3d at 1025. Jiawei contends that this action is in its early stages, as "[n]o discovery has taken place," Markman proceedings will not be held until January 2018, and trial will not be held until August 2019. Mot. 3-4, ECF 71. Lighting Science does not respond to these arguments, or otherwise dispute that much has happened in this case. *See* Opp. 6-11, ECF 77. Thus, for the same reasons advanced by Jiawei, the Court finds that this case is in its early stages. This favors granting a stay.

3

### B. Simplification of Issues

"A stay pending reexamination is justified where 'the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.'" *Evolutionary Intelligence, LLC v. Apple, Inc.*, No. 13-CV-04201-WHA, 2014 WL 93954, at *2 (N.D. Cal. Jan. 9, 2014) (quoting *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998)). "The standard is simplification of the district court case, not complete elimination of it by the PTAB." *LELO, Inc. v. Standard Innovation (US) Corp.*, No. 13-cv-01393-JD, 2014 WL 2879851, at *3 (N.D. Cal. June 24, 2014).

Jiawei argues that a stay will simplify the issues because the Current Petitions seek IPR of a majority of the Asserted Claims and there is a high likelihood that IPR will be instituted. Mot. 6, ECF 71. In particular, Jiawei argues that institution is likely because the Current '968 and '844 Petitions rely on the same art and arguments that the PTAB relied on when it instituted the Original Petitions and, even though the '518 patent was not originally subject to IPR, it is related to the '968 and '844 patents and its Current Petition involves many of the same art and arguments. *Id.* at 6-7. Jiawei also asserts that it is likely that, after institution, it will succeed in invalidating the challenged claims and that, even if it did not, IPR will simplify issues for at least claim construction and validity. *Id.* at 7-8.

Lighting Science disagrees, arguing that simplification is "highly speculative" because the PTAB has not yet instituted IPR on the Current Petitions. Opp. 6, ECF 77. Lighting Science argues that this is compounded by the fact that Jiawei is not a party to the Current Petitions and thus has no control over whether the petitions will be dismissed due to settlement. *Id*. Lighting Science also disputes that there is a high likelihood that the Current Petitions will be instituted, pointing out that the Original and Current Petitions differ in scope, the PTAB uses a different claim construction standard (broadest reasonable interpretation) than district courts, and it is not proper for the Court to weigh the merits of the IPR petitions at this stage. *Id.* at 7-8.

The Court agrees with Jiawei that a stay will simplify the issues. Of the 37 asserted claims, all but four (claim 9 of the '518 patent and claims 13, 15, and 20 of the '844 patent) are

4

challenged in the Current Petitions. In addition, although not perfect, there is substantial overlap between the Current Petitions and the Original Petitions: of the 9 claims asserted from the '968 patent, all 9 are challenged in the Current '968 Petition and on the same grounds as the Original '968 Petition; of the 20 claims asserted from the '844 patent, 17 claims[1] are challenged in the Current '844 Petition and 14 of those claims[2] are challenged on at least the same grounds as the Original '844 Petition. Thus, if the PTAB repeats its previous institution decisions (an outcome which seems highly likely), IPR will be instituted on all of the asserted claims of the '968 patent and at least 14 of the 20 asserted claims of the '844 patent (including both independent claims). In addition, it seems highly likely that the PTAB will institute IPR on other asserted claims in the '518 and '844 patents, as the patents are related, involve similar subject matter, and there is substantial overlap in prior art and arguments. Thus, the Court finds it highly likely that IPR will institute on a substantial number of Asserted Claims, which would simplify issues in this case. *See Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at \*4 (E.D. Tex. Mar. 11, 2015) (Bryson, J.) (explaining how an instituted IPR can simplify district court litigation, either if claims are cancelled or if the PTAB confirms their patentability).

The fact that the PTAB has not yet instituted IPR for the Current Petitions does not diminish this observation. It is true that, in many cases, "[u]ntil the PTAB makes a decision on whether to grant the IPR petition, any argument about whether the IPR process will simplify issues . . . is highly speculative." *DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*, No. 15-CV-01362-BLF, 2015 WL 12859346, at \*2 (N.D. Cal. Oct. 13, 2015). This is because "the likelihood of invalidation depends entirely on the particulars of the patents and claims in dispute." *Trover Grp.*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at \*4. Thus, when the PTAB has never before considered the patentability of particular patent claims, the simple fact that a petition has been filed gives little indication as to the future course of the IPR. *See, e.g.*, *SAGE Electrochromics, Inc. v. View, Inc.*, 12-CV-06441-JST, 2015 WL 66415 (N.D. Cal. Jan. 5, 2015); *Aylus Networks, Inc. v. Apple, Inc.*, No. C-13-4700-ENC, 2014 WL 5809053 (N.D. Cal. Nov. 6,

---

[1] Specifically: claims 1-5, 7-9, 12, 14, 16, 17, 19, and 21-24.
[2] Specifically: claims 1-3, 5, 7, 9, 12, 14, 16, 17, and 21-24.

1  2014); *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, No. 13-cv-02218-JST, 2013
2  WL 6021324 (N.D. Cal. Nov. 13, 2013). Such is not the case here. Instead, because the Original
3  Petitions and Current Petitions have so much substantive overlap, the PTAB's prior institution
4  decisions are strong indicators that IPR will again be instituted here. Thus, the Court finds that,
5  even though IPR has not yet been instituted, a stay will simplify the issues in this case. This
6  favors granting a stay.

### C. Undue Prejudice and Tactical Disadvantage

The last factor to be considered is whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. Lighting Science argues that it would be unduly prejudiced by a stay, as the parties are direct competitors and Lighting Science is suffering declining sales and market position due in part to Jiawei's continued infringement. Opp. 8-9, ECF 77. Jiawei argues that Lighting Science's arguments are belied by its past actions (including monetary settlement of previous patent infringement suits and a failure to seek a preliminary injunction in any of its patent infringement cases), which suggest that money damages are sufficient compensation and it would not be irreparably harmed. Mot. 8-9, ECF 71. Jiawei also disclaims responsibility for Lighting Science's decline, arguing that it is a very small player and but one of many competitors to Lighting Science. Reply 4-5, ECF 79.

The Court finds that a stay would prejudice Lighting Science, but weakly. Jiawei does not dispute that it directly competes with Lighting Science. "Courts recognize that, when the parties are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise." *Asetek Holdings, Inc v. Cooler Master Co.*, No. 13-CV-00457-JST, 2014 WL 1350813, at *5 (N.D. Cal. Apr. 3, 2014) (citations omitted). Thus, based on this fact alone, the Court can assume that prejudice to Lighting Science from a stay would be heightened. In addition, Lighting Science presents some circumstantial evidence that it has lost sales at least in part due to overseas competitors. *See, e.g.*, Ex. A to Opp. at 4, ECF 77-2 (Lighting Science Form 10-K reporting that it lost sales in part because "[t]he Home Depot elected to purchase certain products previously supplied by us directly from overseas suppliers, including one of our suppliers."); Ex. E to Opp. at 1, ECF 77-6 (describing how "the sudden rise of dozens of

6

government-backed Chinese competitors threatens to steal the thunder of market leaders just as a global transition to super-efficient lighting gets under way").

However, several considerations dampen Lighting Science's claims of prejudice. First, Lighting Science has not presented any concrete evidence that it has specifically lost sales to Jiawei—i.e., that customers have purchased allegedly infringing Jiawei products when they would otherwise have purchased Lighting Science products, or that Lighting Science has lost any market share to Jiawei. In evaluating claims that direct competition will result in prejudice from a stay, courts require evidence. *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-CV-02013-JST, 2014 WL 5021100, at \*5 (N.D. Cal. Oct. 7, 2014) (collecting cases). Concrete evidence of competitive injury is lacking here. Second, even if Lighting Science had presented such evidence, it is undercut by evidence from Jiawei that it is a small player in a market in which Lighting Science faces many competitors. *See* Ex. A to Opp. at 4, ECF 77-2; *compare* Declaration of Mark Honeycutt ¶ 2, ECF 78-5, *with* Ex. A to Opp. at 28-29, ECF 77-2. As other courts in this district have found, "the fact that the parties are not sole competitors slightly undermines [Lighting Science]'s claims of undue prejudice." *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. 14-cv-876-RS, 2015 U.S. Dist. LEXIS 53627, \*12-14 (N.D. Cal. March 30, 2015). Finally, the fact that Lighting Science has been willing to license its patents and has never moved for a preliminary injunction also weakens its claims of undue prejudice because this shows that, even if Lighting Science were prejudiced by a stay, it could be later made whole by money damages. *See Autoalert, Inc. v. Dominion Dealer Sols., LLC*, No. SACV 12-1661-JST, 2013 WL 8014977, at \*3 (C.D. Cal. May 22, 2013) (finding no undue prejudice in part because "Plaintiff's failure to file for a preliminary injunction in the seven months since it filed its Complaint further suggests that monetary damages will adequately compensate Plaintiff should Defendants be found liable for patent infringement"). Thus, on the whole, the case for prejudice is weak at best.

In addition to prejudice, Lighting Science also argues that it would be tactically disadvantaged by a stay since Jiawei, as a non-petitioner, would not be subject to the estoppel provisions of 35 U.S.C. § 315(e)(2). Opp. at 9-10, ECF 77. To neutralize this, Jiawei states that it "is willing to stipulate that it will not assert as prior art in the district court litigation the prior art

7

combinations in the Current Petitions that are ultimately relied upon by the PTAB in a final written decision in the IPR." Mot. at 9, ECF 71. Jiawei defends this offer as commensurate with the Federal Circuit's interpretation of § 315(e)(2) in *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 206), *cert. denied*, 137 S. Ct. 374, 196 L. Ed. 2d 292 (2016). Reply 5, ECF 79.

Under § 315(e)(2), "[t]he petitioner in an [IPR] . . . that results in a final written decision . . . or the real party in interest or privy of the petitioner, may not assert . . . in a civil action . . . that [a] claim is invalid on any ground that the petitioner raised or reasonably could have raised during" IPR. 35 U.S.C. § 315(e)(2). In *Shaw Indus. Grp.*, the Federal Circuit addressed the application of this language in a case where the PTAB had instituted IPR on some grounds but not others, and found that § 315(e)(2) did not create estoppel for the non-instituted grounds. 817 F.3d at 1300. The court reasoned this was the case because "[b]oth parts of § 315(e) create estoppel for arguments 'on any ground that the petitioner raised or reasonably could have raised *during* that *inter partes* review'" and "IPR does not begin until it is instituted." *Id.* (emphasis in original). Thus, the court reasoned, it was impossible for the petitioner to have "raised or reasonably could have raised" the non-instituted grounds *during* IPR. *Id.*

Since *Shaw*, a number of district courts—including at least one in this district—have interpreted § 315(e)(2) estoppel as applying only to grounds that were both raised in the IPR petition and instituted in the IPR proceeding. *See, e.g.*, *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*, No. 12-CV-05501-SI, 2017 WL 235048, at *3 (N.D. Cal. Jan. 19, 2017). However, other district courts have disagreed that *Shaw* applies so broadly, finding that, in the case of grounds that were never raised in the IPR petition, *Shaw* is mere dicta and § 315(e)(2) estoppel can still apply. *See, e.g.*, *Cobalt Boats, LLC, v. Sea Ray Boats, Inc.*, No. 2:15-CV-00021-HCM-LRL, Dkt. No. 285, slip op. at 5-6 (E.D. Va. June 5, 2017).

The Court need not reach this issue in order to decide the present motion. Instead, it suffices to observe that, so long as Jiawei agrees to be bound by § 315(e)(2) estoppel as if it were a party to the IPR, there is no tactical disadvantage to Lighting Science. This is because such an agreement would put Jiawei in the same position as a party to the IPR, and thus eliminate any

advantage that it would gain as a non-party. Jiawei appears willing to agree to this.[3] If, at a later stage in this case, Lighting Science believes that Jiawei is attempting to assert grounds of invalidity that it would have been estopped from had it been a party to the IPR, it can avail itself of the appropriate procedural mechanism, and the Court will determine whether those grounds fall within the boundaries of § 315(e)(2) estoppel (as interpreted by relevant Federal Circuit precedent) at that time.

Accordingly, the Court finds that if Jiawei agrees to be bound as if it were a party to the IPR, consistent with § 315(e)(2) and relevant Federal Circuit precedent, there is no tactical disadvantage to Lighting Science.[4] However, if Jiawei does not so stipulate, Lighting Science will suffer a substantial tactical disadvantage, which may be significant enough to prevent this court from staying this case. Thus, staying this case must be conditioned on such a stipulation. *Cf. IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co Ltd*, No. 15-CV-03752-HSG, 2015 WL 7015415, at *4 (N.D. Cal. Nov. 12, 2015) (granting a stay pending IPR "conditioned on Blackberry's agreement to be bound as if it were a party to the IPR petitions").

In sum, the Court finds that a stay will weakly prejudice Lighting Science, but will not work a tactical disadvantage as long as Jiawei stipulates to be bound by § 315(e)(2) estoppel. As such, under this condition, this factor only weakly weighs against a stay.

### D.  Conclusion

In conclusion, two of the three factors favor granting a stay, and only the final factor weakly weighs against. Thus, on balance, the Court finds it proper to grant Jiawei's motion to

---

[3] The Court notes that Jiawei's proposal is a bit discordant with the language of § 315(e)(2): "prior art combinations . . . ultimately relied upon by the PTAB in a final written decision in the IPR" could be interpreted as referring only to prior art combinations that receive substantial treatment in the final written decision, whereas § 315(e)(2) estoppel applies to all grounds "that the petitioner raised or reasonably could have raised," regardless of their treatment in the final written decision. Nevertheless, since Jiawei defends its proposal as commensurate with *Shaw*, 817 F.3d at 1300, the Court will assume that it is actually willing to stipulate to an estoppel whose scope is as least as broad as this holding, which also does not focus on how grounds are treated in the final written decision.

[4] The Court also finds Lighting Science's indefinite stay arguments, Opp. 10, unpersuasive. Jiawei will not be able to unilaterally lock Lighting Science into an "indefinite stay," as the court has inherent power to manage its docket and stay proceedings. *Ethicon*, 849 F.2d at 1427. If Jiawei were to file subsequent motions to stay, those motions would be subject to the same considerations discussed here, and circumstances at that time may warrant a different outcome.

9

stay, conditioned on Jiawei's stipulating to be bound by § 315(e)(2) estoppel as if it were a party to the IPR.

## IV. ORDER

The Court conditionally GRANTS Jiawei's motion to stay the case pending *inter partes* review. Within fourteen days from the date of this order, Jiawei shall file a stipulation agreeing to be bound by § 315(e)(2) estoppel as if it were a party to the IPR. This case will not be stayed unless and until the Court approves the stipulation. If Jiawei does not file a stipulation, this case will remain active.

**IT IS SO ORDERED.**

Dated: June 19, 2017

_____
BETH LABSON FREEMAN
United States District Judge